UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINIOS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLIANT MANUFACTURING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Chapter 11 |
| | ) | |
| v. | ) | Case No. 14-21229 |
| | ) | |
| RAANI CORPORATION and RASHID | ) | Honorable Eugene R. Wedoff |
| CHAUDRY, | ) | Judge Presiding |
| | ) | |
| Defendants. | ) | Adversary No. |
| | ) | |

VERIFIED COMPLAINT

Alliant Manufacturing, LLC, by its attorneys, complains of Raani Corporation and Rashid Chaudry, as follows:

Parties

1.   Alliant Manufacturing, LLC ("Alliant") is an Illinois limited liability company with a principal place of business in Bedford Park, Illinois.

2.   Raani Corporation ("Raani") is an Illinois corporation with a principal place of business in Bedford Park, Illinois.

3.   Rashid Chaudry ("Chaudry") is an Illinois resident.  Chaudry was the President, sole director, and sole shareholder of Raani.

Core Jurisdiction and Venue

4.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 157 and 1334.

5. The claims alleged brought in this Complaint are each core proceedings in which the Bankruptcy Court may provide relief as provided in 28 U.S.C. § 157(b).

6. Venue is proper as Alliant's case under chapter 11 of title 11 of the United States Code is pending in this district.

7. The relief sought in the Complaint is proper pursuant to Bankr. R. 7001(1) & (2) and Section 544 of the Bankruptcy Code.

## Nature of the Case

8. This Complaint is brought to recover monies owed to Alliant as a result of Raani's breach of contract and fraudulent inducement. Against Rashid Chaudry, Alliant brings claims of breach of contract and breach of fiduciary duty.

9. On or about June 7, 2013, Alliant and Raani entered into an asset purchase agreement. ("Asset Purchase Agreement"). A copy of the asset purchase agreement is attached as **Exhibit 1**.

10. As part of the Asset Purchase Agreement, Raani made certain representations and warranties, *inter alia*:

(i) all of its accounts with its vendors and suppliers were in full force and effect with no notice of any potential defaults (§8.12),

(ii) all of Raani's financial records were prepared in accordance with general industry standards and fairly and accurately portray Raani's financial condition (§8.4), and

(iii) (iii) that no business was conducted by Raani outside the ordinary course (§8.5).

11. On or about June 30, 2013, Alliant and Raani Corporation closed on the Asset Purchase Agreement.

12. As part of the closing, Raani executed and delivered to Alliant a certificate representing and warranting that the warranties and representations made in the Asset Purchase Agreement were true and correct as of the closing. A copy of the certification is attached as **Exhibit 2**.

13. Among the assets that Alliant purchased was Raani's account receivables. Prior to closing, Raani disclosed a $59,779.82 account receivable from Johnson Products Company and a $274,698.58 account receivable from SLID Industries, Ltd. as part of the Asset Purchase Agreement. Raani warranted these account receivables as true, accurate and in good standing.

14. Following the June 30, 2013 closing, Alliant discovered that Johnson Products and SLID Industries had continually disputed the validity of those account receivable and not intended to pay them. At all times prior to closing, Raani was fully aware that these account receivable were disputed, not valid and uncollectible but still represented and warranted that the receivables were collectible.

15. Likewise, Raani represented Smartmark, Ltd. as one of its up and coming customers and listed Smartmark as owing a $108,318.97 account receivable. After the closing, Smartmark did not place any more orders and Alliant was unable to do any further business with them. Within months after the Closing and after Alliant attempted to receive payment on the account, Chaudry instructed Alliant to "give up hope" and that the account was not collectible.

16. Similarly, Raani identified a $2,010,941.07 account receivable from Biocare Labs, Inc. Chaudry was a shareholder of both Raani and Biocare. Chaudry's daughter is the president of Biocare and Chaudry is a present employee of Biocare.

17. Prior to closing, Raani provided Alliant with financial statements for 2009-2011 of Raani. The financial statements all showed that Raani received consistent revenue from Biocare ranging from $1,500,000.00 to $2,000,000.00 over this three (3) year period.

18. Raani, through Chaudry, assured Alliant that Biocare could maintain the same level of business post-closing as a paying customer.

19. Following the closing, Biocare's ordering and payments were nowhere near a level that could sustain the business portrayed pre-closing.

20. Rather than being a true revenue source, Raani used Biocare to manipulate its value, which resulted in Raani being over-appraised by more than $1,000,000.00.

21. In addition, after the closing, Alliant discovered that Raani issued more than $468,000.00 in credits to various customers on their accounts receivables. None of these credits were reflected in Raani's pre-closing disclosures.

22. Without disclosing to Alliant, Raani also issued, prior to closing, approximately $777,411.52 in post-dated checks to various suppliers.

23. The post-dated checks distorted the financial condition of Raani.

24. Because Alliant was unaware of these post-dated checks, many of them were dishonored or returned for insufficient funds without notice to Alliant.

25. Further, the post-dated checks irreparably injured Alliant's ability to do business and maintain post-closing relationships with critical suppliers after who were reluctant to do business with Alliant other than onerous terms uncommon in the industry such as cash in advance or upon delivery. The poor credit offered by Alliant's vendors in turn reduced the pricing that Alliant could offer its customers and reduced Alliant's ability to compete in the marketplace. Ultimately, Alliant's cash flow became too restricted,

26. During its post-closing inventory, Alliant discovered that over $300,000.00 in inventory listed as part of the assets to be transferred were either missing or non-existent.

27. In the Asset Purchase Agreement, Raani understated the amount of its accounts payables, including the amount owed to RNA Corporation by more than $200,000.00.

28. Raani represented to Alliant that a multi-million dollar wrongful death lawsuit filed against Raani pre-closing was on the verge of settling. Shortly after closing, however, Alliant was named a party to the wrongful death lawsuit under theories of fraudulent conveyance and successor liability causing Alliant significant legal fees and managerial time to defend against the action, which would have been allocated to running the business.

29. As part of the Asset Purchase Agreement, Alliant agreed to employ Chaudry under an employment agreement (the "Employment Agreement"). A copy of the Employment Agreement is attached as **Exhibit 3**.

30. By its express terms, the Employment Agreement required Chaudry to act in the best interests of Alliant.

31. Notwithstanding this fiduciary responsibility, Chaudry ignored his responsibilities to Alliant and acted in direct opposition to Alliant's interests.

32. Since the outset of his employment, Chaudry has worked nearly exclusively on behalf of Biocare and has diverted Alliant resources, such as staff and equipment, to work on Biocare projects at the expense of Alliant's business.

33. Chaudry is the sole manager of RNS Bedford Park, LLC, which is the landlord of Alliant. During a period of cash shortage for Alliant due mostly to the aforementioned omissions of Raani, Chaudry refused to grant Alliant any extensions of rent or cure any rent delinquency choosing to instead initiate eviction proceedings against Alliant.

34. Even after Alliant advised Chaudry that his eviction claim was defective, Chaudry refused to desist with the eviction and advised Cole Taylor Bank ("CTB"), Alliant's lender, of the pending eviction, which caused Alliant's lender to declare a default on Alliant. After declaring a default, CTB proceeded to contact Alliant's customers, telling them to pay their outstanding account receivables to CTB and exercised greater control over Alliant's bank accounts. While the eviction proceeding was ultimately dismissed, the damage to Alliant's operations was accomplished.

35. The damage caused by Raani and Chaudry's wrongful acts and omissions caused Alliant to seek potential investors in order to provide cash infusions to increase Alliant's purchasing power. After becoming informed of a

6

potential investor of Alliant, Chaudry advised the investor that Alliant's operations were "sinking", which caused the investor to decline an equity infusion of $800,000.00.  In addition to the loss of the $800,000 capital infusion, Alliant also was damaged because Alliant was no longer able to meet its business plan with its lender or produce its product sufficiently.  Ultimately, Chaudry's actions contributed substantially to Alliant's need to file for Chapter 11 protection.

## COUNT I – Fraudulent Inducement
### Against Raani and Chaudry

36. Alliant incorporates paragraphs 1-28 of its Complaint.

37. As part of the Asset Purchase Agreement, Raani and Chaudry made several express warranties and representations to Alliant, including that all of the documentation that Raani provided Alliant was a true and accurate picture of Raani's financial condition, was prepared in accordance with general industry practices, that all of its contracts were in full force and effect, and that no business was being done outside the ordinary course of business.

38. In contrast, Raani overstated accounts receivables, understated accounts payables, and misstated the assets being transferred.

39. All of Raani's misrepresentations and omissions were made by Chaudry or at Chaudry's direction and his knowledge.

40. The Asset Purchase Agreement imparted upon Raani and Chaudry a duty to disclose any information that would correct any inaccurate or misleading information provided to Alliant.

7

41. As being express warranties and representations of the Asset Purchase Agreement and re-certified at closing as true, Alliant justifiably and reasonably relied on the misrepresentations and omissions of fact.

42. Raani and Chaudry made the misrepresentations and failed to disclose certain facts in order to induce Alliant into closing on the Asset purchase Agreement.

43. As a direct and proximate result of Raani and Chaudry's misrepresentations and nondisclosures, Allliant has been damaged by more than $4,000,000.00.

Wherefore, Alliant Manufacturing, LLC, requests that this Court enter judgment against Raani Corporation and Rashid Chaudry, jointly and severally, in an amount to be proved up at trial, plus costs and attorney fees pursuant to Bankr. R. 7008(b), and any further relief that this Court deems just and fair.

### COUNT II-- Breach of Contract
### Against Raani

44. Alliant incorporates paragraphs 1-28 of its Complaint.

45. Alliant and Raani entered into the Asset Purchase Agreement. Ex. 1.

46. Alliant performed all of the terms and conditions of the Asset Purchase Agreement.

47. Raani breached the Asset Purchase Agreement when the warranties and representations in Section 8 of the Asset Purchase Agreement proved to be untrue.

48. As a direct and proximate result of Raani's breach, Alliant has been damaged by more than $4,000,000.00.

Wherefore, Alliant Manufacturing, LLC, requests that this Court enter judgment against Raani Corporation, in an amount to be proved up at trial, plus costs and attorney fees pursuant to Bankr. R. 7008(b), and any further relief that this Court deems just and fair.

### COUNT III—Breach of Fiduciary Duty
### Against Chaudry

49. Alliant incorporates paragraphs 1-28 of its Complaint.

50. In conjunction with the Asset Purchase Agreement, Chaudry and Alliant executed the Employment Agreement.

51. Pursuant to Sections I and III of the Employment Agreement, Chaudry was obligated to act in the best interest of Alliant and was further entrusted with sensitive and confidential information and discretion in the operations of Alliant.

52. Chaudry was accordingly a fiduciary of Alliant.

53. Chaudry breached that fiduciary duty when he acted to undermine the Alliant's operations by diverting Alliant's resources to Biocare and interfered with Alliant's investments and business relationships.

54. Chaudry sought to undermine Alliant's operations in order to purchase Alliant's assets at a distressed value.

55. While Chaudry was actively undermining Alliant's operations, Alliant paid Chaudry $240,000.00 in salary.

56. Chaudry accordingly breached his fiduciary duties to Alliant.

57. As a direct and proximate result of Chaudry's breach, Alliant has been damaged by more than $2,000,000.00.

Wherefore, Alliant Manufacturing, LLC, requests that this Court enter judgment against Rashid Chaudry, in an amount to be proved up at trial, plus costs and attorney fees pursuant to Bankr. R. 7008(b), and any further relief that this Court deems just and fair.

### COUNT IV—Breach of Contract
### Against Chaudry

58. Alliant incorporates paragraphs 1-28 and 46-51 of its Complaint.

59. As part of the Asset Purchase Agreement, Chaudry and Alliant executed the Employment Agreement.

60. Pursuant to the Employment Agreement, Chaudry was obligated to act in the best interest of Alliant.

61. Chaudry failed to act in the best interests of Alliant.

62. Chaudry accordingly breached his Employment Agreement with Chaudry.

63. Alliant performed all terms and conditions of the Employment Agreement.

64. As a direct and proximate result of Chaudry's breach, Alliant has been damaged by more than $2,000,000.00.

Wherefore, Alliant Manufacturing, LLC, requests that this Court enter judgment against Rashid Chaudry, in an amount to be proved up at trial, plus costs

and attorney fees pursuant to Bankr. R. 7008(b), and any further relief that this Court deems just and fair.

### COUNT V – Equitable Subordination
### Against Both Defendants

65. Alliant incorporates paragraphs 1-28 and 46-51 of its Complaint.

66. Prior to Alliant's bankruptcy petition date, Raani and Chaudry engaged in misrepresentations and omissions of fact to the detriment of Alliant and Alliant's creditors, which was inequitable under the circumstances.

67. The following misrepresentations and omissions of fact by Alliant, *inter alia*, form the basis of the inequitable conduct: (i) misrepresenting the status of account receivables and payables, (ii) manipulating financial statements, providing undisclosed credits, and (ii) issuing post-dated checks, and overstating or misappropriating with inventory.

68. Chaudry also engaged in inequitable conduct to the detriment of Alliant and Alliant's creditors tht include: (i) diverting Alliant's resources, (ii) interfering with existing and prospective economic relationships, and (iii) collecting a salary from Alliant while actively trying to undermine its interests.

69. As a proximate result of Raani and Chaudry's conduct, Alliant has been damaged in an amount exceeding the amount of any claims that could be brought by Raani or Chaudry.

70. Raani and Chaudry's conduct resulted in Alliant's creditors being less likely to collect on their debts. Therefore, good cause exists to subordinate payment of all of Raani and Chaudry's claims to below all other creditors pursuant to 11

U.S.C. § 510(c)(1), or, in the alternative, to disallow any and all claims of Raani or Chaudry.

71. Subordination of Raani's and Chaudry's claims is not inconsistent with the Bankruptcy Code.

72. Raani's lien, to the extent determined valid, should be transferred to the bankruptcy estate pursuant to 11 U.S.C. § 510(c)(2).

Wherefore, Plaintiff, Alliant Manufacturing, LLC, requests that this Court subordinate or disallow all claims filed, to be filed, or otherwise asserted by Raani or Chaudry to the claims of all other creditors under 11 U.S.C. § 510(c)(1), transferring any lien determined to be valid to the estate under 11 U.S.C. § 510(c)(2), and granting it any further relief that this Court deems just and fair.

| | |
|---|---|
| David J. O'Keefe | Respectfully submitted |
| Tyler Manic (Attorney Number 6290122) | |
| Schain, Banks, Kenny & Schwartz, Ltd. | |
| 70 West Madison Street | /s/ Tyler Manic , |
| Suite 5300 | One of Plaintiff's Attorneys |
| Chicago, Illinois 60602 | |
| (312) 345-5700 | |
| dokeefe@schainbanks.com | |
| tmanic@schainbanks.com | |

## VERIFICATION

The undersigned declares under penalty of perjury under the laws of the United States of America certifies that the statements set forth in this instrument are true and correct.

*[signature]*